We are ready to hear arguments in United States v. Cruz 1921-27. We're ready to hear from the appellant. Good morning, your honor. My name is Carrie Bahala. I represent Mr. Cruz, the appellant defendant in this case. May it please the court. The government's case is centered around probable cause and exigent circumstances. And in order for the court to find that probable cause arose in this case, the court has to accept an assumption. And the assumption is that when Mr. Cruz exited his home on the day of his arrest, he had drugs in his pocket or drugs in his house. All of the facts at the suppression hearing indicate that that's not what the officer's belief was at the time. Deputy Cotman testified that he did not believe my client had drugs in his home. He was going to his house that day to conduct surveillance to see if my client was in fact dealing drugs, and if so, where those drugs were stored. All of that changed, didn't it? But all of that changed as they saw the defendant come out and wait for his buyer to arrive. I think that it's true that the circumstances in Deputy Cotman's mind changed when he saw my client exit his house. But the assumption is that my client was exiting the house to meet the CS. The CS was never on the scene. And Deputy Cotman testified at the detention hearing, I'm sorry, at the suppression hearing, that according to the CS, the CS said he called me and told me to come over in 15 minutes. That call was never actually corroborated by the deputy, nor was it recorded, nor was it overheard by anyone else. And there are other plausible explanations as to why my client would exit his house that day. Additionally, I think it's important to look at what Deputy Cotman actually said about why he approached my client. When asked, did you think that Mr. Cruz had drugs on his person, he didn't say yes. Just a quick factual clarification. Didn't the detective listen in on the call between the confidential source and your client when the call was made to arrange the buy? Correct. The first call, but not the second call. Does that answer your question, Your Honor? So he did overhear the first call, but not the second call. The other thing I think that is important is when asked, Deputy Cotman said, you know, the question was asked, did you think he had drugs on him when he exited the house? And he didn't say yes, or here's the reasons why I say yes. He said it was a possibility. And when asked why he exited the vehicle at that time before any CS ever showed up, he said, I just wanted to talk to him because I wanted to gain his compliance as an informant. I wanted to flip him. It wasn't I had reasonable suspicion to detain him at that point. It was I just wanted to talk to him. And I think it's really important. Didn't the possibility change to a reasonable suspicion once he turned around and ran? I'm sorry, Your Honor. Why is he running? Didn't that change the possibility into probable cause? I think it's definitely a fact that goes into the totality of the circumstances analysis. But I think that flight alone does not justify a finding of probable cause and a warrantless injury. But if you combine flight, not alone, but with the possibility that he had drugs on him. I think that they needed more facts to support that Cruz had drugs on his person at that time. And I don't think that under a totality of the circumstances, they had enough evidence to suggest that he had drugs on his person at that time. I think one of the cases that I found helpful and analyzed, there are two cases that I found helpful in analyzing the situation. One of them is Aquino and the other one is Valenzuela. And I want to talk a little bit about Aquino first. Aquino sort of involves a similar situation because there was this large drug sting that were investigating the sale of narcotics. And they followed what I'll call a buyer to the supplier's house. And the buyer went in and produced drugs to the undercover detectives at that time. And what the court ruled in Aquino is that the officers had probable cause to believe that drugs were in the home and on the supplier after the drugs were produced, but not before. And I think that that's really the issue here. So you have to have an actual sale, a hand-to-hand sale, before there would be probable cause and something that would justify entry into the home? I don't think that's the law. I still think it's a totality of the circumstances test. But what's interesting is that every single case that I found that analyzed exigent circumstances and probable cause and warrantless entries into the home, including Kentucky v. King, there was a controlled buy first. And this circuit has held in several cases that a controlled buy is a really good way to establish probable cause. U.S. v. Tisdale, U.S. v. Leopis, and U.S. v. Sidwell. U.S. v. Sidwell is actually a Seventh Circuit case. But the other two are Tenth Circuit cases. And so while I don't think it's required, I think it's a really good indicator of probable cause. And in cases where they have not established the nexus in warrants, those warrants have been suppressed. United States v. Brown is a Sixth Circuit case that's constructive on that issue. In Brown, I'll talk a little bit about that, they applied for a search warrant for Mr. Brown's home after they got a tip that Mr. Brown was selling drugs out of his vehicle. And the informant in that case actually drove to the house with the officers. They pointed out the car, the house, the description of Mr. Brown, what time he normally left the house. There were lots of facts and circumstances that corroborated that drugs were actually in the car. And they did, I guess the car, I mean, my understanding of the case is that the car was parked on the street. And they actually did a sniff test. And the dog alerted to drugs in the car. And with that information, they applied for a warrant for Mr. Brown's home. And what the Sixth Circuit ruled was that there was an insufficient nexus between the home and the drugs. And it wouldn't support, and it didn't support probable cause in the warrant. And so I think that the nexus requirement is something that's really important for the court to consider. Was there evidence known to the officers that this defendant was probably dealing in drugs? Yes. And I would say that a person's status or suspicion as a drug dealer doesn't satisfy the requirement that for probable cause or a nexus that there were drugs in that person's home. And that information came from the CS and the CI, right? Well, yes. It's a little bit confusing because the confidential source, there are two confidential sources, essentially. Confidential source number one and confidential source number two. Confidential source number one is the one who said that he was buying his drugs from Mr. Cruz, but did not, he didn't work with him to set up a controlled buy or to verify that information. He then contacted confidential source number two during an execution of a search warrant. And what's interesting is confidential source number two didn't even know Mr. Cruz's address or where he lived. If you look at the supplemental reports, which are part of the record on appeal in the first volume. And so what I mean, he still thought that he was dealing in drugs. I mean, the fact that he didn't know where he lived. Correct. The officer believed at that point that Mr. Cruz was selling drugs. That's correct. Didn't Mr. Cruz direct the confidential source, the second confidential, to the intersection? So according to Deputy Cotman's testimony, that is the phone call that took place, but the phone call that wasn't recorded or overheard. And so what's interesting also about that phone call is that the CS allegedly, or according to Cotman, told Cotman he'll have it, not he has it. And so at the time that Mr. Cruz walked out, according to Deputy Cotman, was around the same time that the confidential source was set to arrive. But I think it's important to note that there was no confidential source. No one ever showed up. There was never a plan for them to show up. And there were numerous vehicles, BCSO vehicles, parked on the street outside. It's just as plausible that Mr. Cruz walked outside to find out why all these vehicles were on the street. Wait a minute. I think wasn't the evidence that there was a plan for them to meet at the intersection? There was a plan, according to Cotman. Well, let me put it this way. They wanted Cruz to believe that there was going to be an exchange, but there was never actually a plan for there to be an exchange. Does that make sense? Well, the fact that he went to the intersection shortly after the reported telephone call, doesn't that suggest that there was some kind of an arrangement that had been made? I do think it can be inferred, but I think it requires the inference, and I think it requires the assumption, and I think that's where the problem is. I mean, walking outside of your home is also lawful conduct, and without more, without him carrying a bag, without him having his hands in his pockets, without him sort of showing that he was actually about to exchange in a drug exchange, I don't think it's enough. And I think, too, that I honestly think that this is a situation where the deputies didn't allow the investigation to be completed so that they could actually develop probable cause. Could I just ask you, this is more of a technical question, but are you challenging the officer's probable cause to enter Mr. Cruz's home to arrest, or probable cause to enter the home to search? Both. Does it make any difference, as long as they have one or the other? I would say both. Okay, you're challenging both, but does it make any difference which one it is? Assuming there is probable cause for one or the other, does it make any difference that it's arrest or search? No, because I think the standard is probably the same for both. And if it's all right, I'd like to reserve my remaining time. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Tiffany Walters for the United States. The officer's entry into Cruz's home was supported by probable cause and as exigent circumstances on two grounds, both on the hot pursuit doctrine and under the threat of imminent destruction of evidence. So there's probable cause any time officers see an individual outside their home and the individual turns and runs into their house. That's probable cause? That's not the only fact here in this case, and perhaps that standing alone would not be probable cause. But here, the officers had specific firsthand information from two different sources, which corroborated each other and were corroborated by Detective Cotman's prior knowledge of Cruz. The first confidential source was able to identify his photo, was able to identify the intersection of his residence, describe his vehicles, factors that Detective Cotman had prior knowledge of and was able to corroborate. In addition, he was able to identify a phone number for Cruz, which matched a phone number that was provided by the second confidential informant. And then, officers also had the information provided by the confidential informant, which consisted of personal knowledge of drug transactions. The informant actually showed the officers text messages documenting prior drug transactions between himself and Cruz, and the officers were able to listen in on a phone call in which the confidential informant set up the arranged buy with Cruz for later that day. Defendant's counsel is focusing on whether or not the second call was recorded, but there's no requirement that each call along the steps be recorded. This court has recognized in a number of cases involving these arranged or controlled buys that the facts play out a little differently in each case. And the question is not whether the particular arranged transaction in this case meets some objective standard that all transactions must meet. The question is whether, looking at all the facts, the totality of the circumstances that we have here, whether there was probable cause to believe that Cruz was engaged in drug trafficking. Also, the focus on whether or not there was probable cause to search the home is beside the point. Here, we're focused solely on whether or not there's probable cause to believe he's engaged in drug trafficking because the officers weren't looking to get a search warrant of the home. They would not have entered the home but for Cruz's decision to flee in there, and their entry was only necessitated by those exigent circumstances. So whether or not they thought that there would be drugs in the home is beside the point. Also, circumstances changed when they gained additional information by observing Cruz exit the home. Detective Kottman had originally thought that perhaps Cruz would go to a stash house to pick up the supply for the transaction or that someone might drop something off. But once he was at the location observing, he saw Cruz come out of the home, come out to the street, at the appointed time, the appointed place, and look around. At that point, it's reasonable for him to believe that he has the drugs on them because none of these other alternatives have occurred. There hasn't been someone who's brought the drugs to him. He hasn't gone to another location. All of this evolving information gives rise to probable cause to believe that Cruz is engaged in drug trafficking. Now, the officers didn't go with him. Why wouldn't he just go with a confidential source after he met with the coroner and go to a different location to find the drugs? I guess that is a possibility. But at this point, it was reasonable, I think, for the officers to believe, especially once he started running, that he had drugs on his person that he wanted to dispose of. Now, I understand. But at the time he emerges from the house and he stops before he runs, at that point, they don't know that he has drugs on him. They don't have any facts that he has drugs on him. Only the support that he's going to a prearranged drug transaction, so it's possible that he has. Which may be anywhere. Well, we know that he's arranged with a confidential source to do it at this intersection. Well, they were arranged to meet there. Correct. But that doesn't mean that's where the exchange occurs, correct? Correct. So I take it then you are now agreeing that at the point that Cruz comes to rest at the intersection before he flees, all they know is there's a possibility that he has drugs with him. They have no facts to establish that. I think that's fair. I think there is at that point probable cause to believe he's engaged in drug trafficking. Although perhaps there's not specific information that he has drugs on his person at that moment. Right. And drugs on his person or back at the house is what you need for facts to support cause for the search, correct? Well, under the hot pursuit doctrine, they need probable cause to arrest in a public. We're not hot pursuit yet. Okay. So what you need is not necessarily probable cause to believe there's drugs on the person. It's probable cause to believe, well, that the imminent destruction of evidence is necessary. So that exigency doesn't arise until he starts to run. Correct me if I'm wrong, but I think you are saying now that the flight is an absolute essential to the group of facts that gives rise to cause to think there's drugs on his person. To give rise to probable cause to believe there's drugs on his person, yes. But not to more broadly to engage in drug trafficking. Flight is an essential. Flight is essential to believe that there'd be destruction of evidence, yes, under that prong. But both of these doctrines are sufficient in and of themselves. So while under the imminent destruction of evidence, it's necessary to believe that he has drugs on his person that he's going into the house to destroy. Under hot pursuit, we don't need that fact. What we need is probable cause to believe he's engaged in criminal activity, probable cause to rise to arrest, and that there's a chase that he flees from officers who are attempting to detain him. And that's exactly what happens. Just because he has a reputation being a drug trafficker, you know, drug traffickers are not drug traffickers every moment of their lives, every hour of the day. I mean, drug traffickers can walk outside of their house and take a walk. What facts are there that would establish cause to believe that he was trafficking in drugs at the moment he comes to a halt at the intersection? Well, officers know that the confidential source has set up the syringe buy. They also know that the confidential source has told him that he's going to meet with him in 15 minutes. And then he comes out, walks all the way out past his gate, and starts looking around, engaging in behavior that looks like he's about to engage in a drug transaction. But the facts on your second theory have not changed from the facts on your first theory. There is no reason to believe that he is trafficking in drugs at that very moment where he comes to a halt, correct? Well, I think him arriving at the intersection at that time are facts that give rise, given that there's a prearranged drug sale at that time. All of that does support the idea that he's going to the intersection for purposes of... That he plans on trafficking in drugs. That's the best you've got, right? It's not that he is trafficking in drugs at the moment he arrives at the intersection. Well, he's at least attempting to traffic in drugs. So he's set up this arrangement, and he's taken a step towards completing that transaction. The only reason that... Well, the officers didn't intend the transaction to be complete, but he thinks from his perspective that he's going to a drug buy, and he's walking out of his house to take the first step in completing that drug buy. Let me ask you a question about destruction of evidence. How likely does potential destruction of evidence have to be to give rise to exigent circumstances? The officers need to have a reasonable belief that imminent destruction of evidence is likely. So here we have Cruz running, and not just running down the street, but he's running to his home, to a location where courts have widely recognized that there's ample means to destroy of evidence like drugs, because they're afraid that individuals are going to flush them down the toilet or dispose them in some ways, which is exactly what was happening here. So it's a reasonable likelihood standard. Yes. Well, the facts are what they are, but the standard is whether or not it's reasonable under the Fourth Amendment to believe that there's an imminent destruction of evidence occurring or likely. And, I mean, it's not also that it's actually occurred. There's no requirement that the officers wait until they actually hear the sound of flushing toilets. Here we have a chase. We have someone who's running into the home. Clearly, this is a location where officers, if they want to arrest him, can certainly find him later. There's no reason to go hide in the home but for to destroy evidence. We also know that Cruz here had prior interactions with Detective Cotman, that the officers identified themselves and told him to stop, and he ignored that command, that lawful command, and instead ran into the home and created an exigency where officers needed to follow him into the home to prevent the destruction of evidence. What was the actual plea to? I forgot. It was to, I think that... Possession of the... Possession with intent to distribute heroin and then also the carrying a firearm during the process of a drug trafficking crime. Okay, let me ask this. Was the quantity of drugs important at all to the drug charge he pled to? He pled to just the heroin charge. So, I mean, there was... The heroin that was in the toilet? No, it was methamphetamine in the toilet. So, I'm not sure that the quantities specifically are relevant to the plea. I'm sure that... There was... They enter into the apartment and they catch him red or wet-handed. And then there are the meth in the toilet. Okay. Shouldn't they have just stopped there and arrested him? They had the meth and then gotten a warrant for the rest of the apartment. The guns and the heroin, which was part of the plea. Well, they offered Cruz that option. After they apprehended him, they took him to the couch. They set him down. And they said, we can get a search warrant or you can consent. And that would have been a viable option. Had he not consented, they could have gone and gotten a search warrant at that point. They had seen the methamphetamine in the toilet. Given all the other circumstances at that point, there is clearly probable cause to search the home. But Cruz elected to consent. So, it obviated the need to do that. So, the end all and be all is that you have to prevail on the initial cause to search the apartment. I'm sorry, I'm not following the question. To your theory, did that be deemed a lawful search? The initial search of the apartment, correct? With the wet arm and the meth in the toilet. I think there's an argument to be made that the consent was sufficiently attenuated from any initial entry into the home. They had Miranda rights were given. There's no evidence that there was any threatening behavior or coercion in there. You're saying it's not essential. I would say it's not essential. But in this case, there was no, the initial entry with the very limited search, which just was essentially a search for Cruz's person to apprehend him to halt the destruction of evidence. That's all the officers did. Then they immediately took him to the couch, gave him Miranda warnings, and then he proceeded to consent to the further search of the home. Anything else from any of my colleagues or from counsel? If there is no further questions, the United States would ask that the court affirm under either ground, under the hot pursuit doctrine or under the imminent destruction of evidence. Thank you. Thank you. We have some rebuttal. Yes, sir. Thank you very much. I just want to pick up on the standard a little bit for exigent circumstances. It needs to be limited in scope to the minimum intrusion necessary. And I think, I don't remember which justice asked the question. I'm sorry. But I do think that at that point when they entered the home and saw Mr. Cruz in the bathroom, they should have stopped at that point. And I think that any consent at that point past that was irrelevant because of Wong Sue. But it also, exigent circumstances also has to be supported by clearly defined indicators of exigency. And I agree that Kentucky v. King took out that last requirement that are not subject to manipulation or abuse. But the indicators of exigency need to be clearly defined. And in cases that have found exigent circumstances, the officers have actually been able to observe or see signs of destruction of evidence. For example, they see people reaching into their pockets. They hear flushing, doors banging, chaos. Well, in this case, don't we have the defendant standing there with arms up to his elbows? That fact is after the illegal entry. And so I don't think that that fact can be used to support a finding of probable cause and exigent circumstances before he entered his home. And so the other thing that I think I haven't spent a lot of time on this, and I don't want to spend a lot of time on it, but it's an interesting point, is attempt a serious crime. I mean, one of the things that exigency has to apply to is a serious crime. And if he was only in the attempt stage, arguably, arguably, if he's in the attempt stage, and they don't have probable cause to believe that he's about to engage in a drug transaction or that he has drugs on his person, is that a serious crime for purposes of exigency and probable cause? And I think that's something that the court could spend some time considering. I want to just say, too, in United States v. Valenzuela, the facts are different. This is a car case. But one of the things that this court held was that careless police work does not justify dispensing with the Fourth Amendment. And I think that this was a careless investigation. Are there any other questions? Hearing none, thank you. Thank you. Thank you both for your arguments this morning. The case is submitted. Thank you. Thank you.